ORIGINAL



FILED

AUG 24 2015

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:_____ Deputy Clerk

Marshall Samuel Sanders, In *Propria Persona*
1621 Kensing Lane
Santa Ana, CA 92705-3074
Telephone: (714) 665-8012

Marshall Samuel Sanders, In Propria Persona

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA— SOUTHERN DIVISION—SANTA ANA

In Re: Marshall Samuel Sanders, Debtor.

Marshall Samuel Sanders, an Individual, and
on behalf of all others similarly situated, Class
Representative-Plaintiff, and as a Private
Attorney General under various Federal
statutes, in particular, Consumer Protection
laws, e.g., the Truth-in-Lending Act ("TILA")
and the Real Estate Settlement Procedures Act
("RESPA"); hereinafter,

                Plaintiff,

vs.

Countrywide Bank, N.A.; et al.,

                Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Bankruptcy Case No.: 8:15-bk-13011-ES

Adversary Case No.: 8:15-ap-01319-ES

**FIRST AMENDED COMPLAINT**

This is **not** a "foreclosure" case. No, we did **not** get the money. We got robbed! This was a **refinance**. Countrywide Bank, N.A. ("CWB")(EX-29) held the existing loan. CWB paid CWB from the refinance. So, **no**, we did **not** get the money. ***They did!*** Since we did not get the money *we had been promised*, prejudice is moot. But there *is* prejudice. Being robbed is prejudice How

**FIRST AMENDED COMPLAINT - 1**

THIS FIRST AMENDED COMPLAINT ("FAC") IS BELIEVED TO BE HIGHLY PERTINENT TO THE INSTANT MOTION TO CONVERT THAT IS PRESENTLY IN CHAMBERS UNDER REVIEW.

[EXHIBITS ARE VOLUMINOUS AND NOT LIKELY TO BE CRITICAL FOR PURPOSES OF CONSIDERATION OF THE MOTION TO CONVERT, BUT WILL BE SUBMITTED TO THE CLERK BY WEDNESDAY, AND IF POSSIBLE, TUESDAY.] (AN ATTEMPT WAS MADE TODAY, BUT INSUFFICIENT COPIES WERE ON HAND).

were we robbed? There were in excess of $250,000.00 of fees, charges, commissions, reneged-on prepayment penalties (both the old loan and the new loan) (CWB **paid** CWB and CWB **promised** to waive the prepayment penalties since it was paying itself off), tier one (1) yield spread premium, tier two (2) yield spread premium, and on and on ad nauseam! America's Wholesale Lender ("AWL"), a non-existent "entity," promised much and delivered deception: a "ticket" to an upcoming foreclosure and eviction while simultaneously having bet against the very transaction they were loaning on, by placing derivative bets with counterparties, then collecting those bets at as much as thirty-five times the "loan" amount by false notice of an event of default that in turn forced multiple counterparties, also called co-obligors (counterparties [not the borrower]) that in the event of a (false) declared default by the borrower, triggered payment(s) of the full balance then due, to the declarant or opposite counterparty) paid the loan in full, as many times as the bet had been placed (no limit). The reasonable man would believe, and rightly so, that a debt, any debt, can only be paid once, not twice, not three times, and not *thirty-five* times. AWL promised "the sun and the moon" but delivered neither! This wasn't just puffing. This was fraud. Worst of all, "everything" was sprung on us when the "loan" was long overdue to have funded, with excuses after excuses, (which in hindsight were a set-up to prevent us from backing out after we had been pushed past the point of no return)(EX-9, 18-21) and that, due to *their* delay. Then, at "closing" (the "hit" table), the rate, the term, the conditions, everything had been changed by AWL, **after the point of no return was passed**. There was no turning back. There was no going out and looking for another lender. Because in reliance on false representations that AWL knew, or should have known, irreversible financial commitments were undertaken by Plaintiffs. AWL left Plaintiffs worse off than they found us, refinance notwithstanding. *AWL* was not "hit" at closing. AWL made out like a bandit with in excess of one (1) million dollars of *our* money (EX-9, 18-21), and their claws (represented by the deed of trust we signed) "foreclosed" before the ink was dry on our signatures, for the scheme was for AWL to intentionally declare a false "default," though no default occurred (how could it, a "loan" had not even come into existence yet), in order to trigger pre-placed (forward) synthetic derivative counterparties' payments to themselves (EX-46: *ACA Fin. Guar. Corp. v. Goldman, Sachs & co.*, **2015 n.y. app. Div. Lexis 6440** ) (without a default.) This is why we say, we were robbed! We were robbed in advance of even making application for a "loan" from AWL. This

**FIRST AMENDED COMPLAINT** - 2

scheme was hatched in advance of our loan application by AWL. AWL, from the point we were identified by them as on title, legitimate homeowners, "marked" us for financial "demolition," more accurately, "controlled" demolition. Sanders could not possibly have fathomed all that AWL had "planned" for them, and those plans were in place *before* our identities were even known. Once we entered their "trap," promises, promises, promises, and once we got to the "closing" table (the "hit" table) the trap was sprung, our money, in excess of one million ($1,000,000.00) dollars was, **without consent** (*Borgonovo v. Henderson*, 182 cal. App. 2d 220 [1960]), recklessly released by First American Title Insurance Company ("FATCO") to AWL, and unbeknown to us at the time, foreclosure pre-planned and pre-arranged with the trigger being an event of "default" unilaterally declared though there could never be a default because the scheme was designed to keep counterparties *whole*, regardless of what the homeowner did or did not do. So, there was not, nor could there ever be, an event of default. But from the moment we as homeowners were identified as homeowners, indeed, we were marked, our home set to foreclose upon a contrived event of "default," rendering our title from the point of our identification, essentially, "captive," and from that point forward, our home was simply awaiting, again, a pre-planned, pre-arranged, Trustee's Sale. **Robbed** is too kind a word for this scheme. This is pure unadulterated fraud. It is fraud in the inducement (obtaining signatures to the injury of the signatories without full disclosure), and fraud in the inducement (signatures in exchange for a refinance), a refinance designed in advance of even our identities being known, in which our money would pay off the existing loan, here, CWB, and then CWB would use the security instrument to declare a (false) default, to collect on each counterparty derivative ("bet") made based solely on the false declaration of an event of default.

"Closing" never occurred! Consummation never occurred. There was no meeting of the minds. No bona fide agreement ever came into existence. We would never have agreed to be robbed! So, this "loan" constitutes *victimization*. (*California v. Countrywide*)(EX-7) We were the "prey." AWL was the predator. Years later we came to find out that there had never been a legal entity known as "*America's Wholesale Lender*." See cases attached as exhibits where other courts held that the instruments fraudulently procured by AWL, the mortgage and the note, were void ab initio. "Victimization" is too kind. Instead, no single word standing alone can adequately describe the failure of the "loan" transaction. "Closing" or "consummation" is ludicrous. There

**FIRST AMENDED COMPLAINT - 3**

1  was *no* loan. Again, we were **robbed**! The "closing" table or "consummation" table is a

2  misnomer. Succinctly, "hit" table accurately describes where the "mark," us, got **robbed**!

3  We were robbed because AWL (a non-existent entity), in exchange for our signatures
   (this is classic ***identity theft*** for pecuniary gain with motive, opportunity, injury, and victim

4  damages), obtained in excess of one (1) million dollars to **repay itself** through refinance of its

5  own loan. In addition ***to the money***, AWL obtained through fraud in the factum and fraud in the

6  inducement, a security interest in our home, the deed of trust, by which, all along, their sole
   intention in obtaining that collateral (our home) was to foreclose on it, sell it and obtain, in this

7  instance, if the foreclosure is not restrained, in excess of two (2) million dollars! Since AWL

8  never lent a dime of ***their own money***, (it didn't have any money for it did not even *exist*) (See
   California Attorney General's **Complaint** on behalf of The People of the State of California,

9  then see the **Stipulated Judgment and Injunction**. The foregoing documents identify our

10 "loan" with great specificity (EX-9; 18-21). Ours is predatory *per se*. Our "loan" was also **table-**

11 **funded**. The money that CWB paid itself off with, was **The Bank of New York's** money! (see
   wire transfer instructions incorporated into the "closing" documents (EX-9; 18-21).

12

13 Once again, **we got robbed**! We did ***not*** get the money, **America's Wholesale Lender**
   **did**! We got robbed! Fraud procured a security interest in our home, which is presently

14 scheduled for a Trustee's Sale on September 22, 2015 at noon unless restrained. (See **the**

15 **accounting** (EX-9)). Our signatures were the only thing separating Wall Street, specifically here,
   **The Bank of New York,** by and through its agent, **America's Wholesale Lender**, from the

16 ability, or tool, by which a very long string ("waterfall") of golden linings triggered payments to

17 itself by virtue of in excess of thirty-five independent, derivative-based, third-party co-obligors'

18 payments, coupled with taxpayer bailout money received by each party and counterparty, in turn
   triggered by AWL's declaring a false default. In other words, a "default" caused all of the

19 derivative-tied counterparties to begin a waterfall of payouts based upon the phony default.

20 Specifically, in this case, and through discovery and depositions we will show the court that in

21 excess of fifty million dollars (**$50,000,000.00**) has been paid to AWL, CWB, and Bank of
   America ("BA") based upon a false default, pre-planned and pre-arranged, before the signatures

22 of Sanders ever were placed upon the key documents that constituted the trigger for the waterfall.

23 We were ***robbed***! The *coup de gras* for AWL, CWB, and BA is in **foreclosure**. After receiving

24

**FIRST AMENDED COMPLAINT** - 4

more than thirty-five (35) times the principal sum of the Note from counterparties (third-party co-obligors, e.g., American International Group ("AIG")), foreclosure added even more money to the coffers of AWL, CWB, and BA. Again, we were **robbed**!

Adding up the money already received by AWL, CWB, and BA, there is the previously mentioned one (1) million dollars ($1,000,000.00) initially from Sanders at the phony *closing*, which represented what CWB paid CWB through the refinance of *its own* loan, and shortly to be received unless the Trustee's Sale is enjoined, the previously mentioned one (1) million dollars ($1,000,000.00) plus the proceeds of the Trustee's Sale *credit bid* of about $2,000,000.00, all coming from Sanders the result of the absorption of their equity in their home, their down payment, the interest paid on the "loan," the capital improvements made which increased the value of the property to be foreclosed upon, and all money spent in the continued upkeep of the property, such as maintenance and repairs, which in turn raises the fair market value of the home at the point of its foreclosure by Trustee's Sale. Added to the two (2) million dollars just described ($1,000,000.00 + $1,000,000.00 = $2,000,000.00). **We were robbed, once, but it will shortly be *twice*** unless the Trustee's Sale is enjoined.

Still adding, AWL, CWB, and BA already collected in excess of fifty million dollars ($50,000,000.00) from derivatives paid by virtue of a false declaration of default declared by AWL, CWB, and BA, triggering a waterfall of payments to themselves, here fifty million dollars ($50,000,000.00).

The total sum already collected is fifty-one million dollars ($51,000,000.00). Another two (2) million dollars will be collected after the Trustee's Sale (where the "beneficiary" will credit bid—not a dime will AWL, CWB, or BA put up, unless the Trustee's Sale is enjoined.

So, the grand total to be realized by AWL, CWB, and BA is fifty-three (53) million dollars ($53,000,000.00) realizable only because AWL induced Sanders to encumber their home with a predatory loan designed to trigger multiple waterfall payments to AWL, CWB, and BA based upon AWL, CWB, and BA declaring a "default" when there was **none**, then foreclose on the home and obtain by further fraud the increase in the value of the home off the back of Sanders. At no time was Sanders *in default*, or in default now. This is so for many reasons. But in order to be mindful of the court's limited time, suffice it to say right here that a loan agreement based upon a meeting of the minds **never occurred**! Without a loan there can be **no**

**default**. Again, **we got robbed!** The following excerpt is from the Livinglies blog by attorney Neil Garfield:

"While the borrower is dealing with a "Notice of Default" the Trust and investors are getting reports specifically stating that the same loan is performing — and they're getting paid! And (2) that the distribution reports at the pool level are either on-going (Meaning the pool still exists) or they are no longer being sent (meaning the pool has been dissolved).

There are so many chairs and shells moving around I know it is difficult to keep them straight. That is exactly the point. The pretender lenders are going to keep them moving as long as they can because they are getting thousands of free houses every week through intimidation, fraud and deception of borrowers, court clerks, and Judges. But there are a few points in time at which the chairs and shells stop moving or at least slow down. One of them is at the sale on the courthouse steps.

Charles Koppa pointed out the chicanery when he shared an ongoing study with me that showed changes in the bid price just hours before the sale and the resulting windfall to the new "buyer." With pretenders swarming like flies around you-know-what it is no wonder that they find it easy to slip different entities in and out of the foreclosure process. But here is a simple proposition with far reaching implications regarding tracking the money, tracking the title and tracking the real obligation and the real creditor. ONLY THE CREDITOR CAN MAKE THE CREDIT BID. Anyone else must actually pay money.

Oops. It turns out that virtually no money is exchanging hands at these sales. And the Trustee is accepting a credit bid from an entity that wasn't even named in the Notice of Default or the Trustee is issuing the deed to an entity that never made the credit bid or any bid at all. THAT TRANSACTION IS VOID ACCORDING TO MY READING OF THE STATUTES, WHETHER YOU ARE IN A JUDICIAL OR NON-JUDICIAL STATE. Maybe in some states it would be considered voidable but either way there is no "clear title" transferred and there is no successor in interest, which means that the homeowner still owns the home after the sale and can file a quiet title action against the originating lender and the party who received the title from the Trustee or Clerk, depending upon the procedure used. There is no defense as far as I can see and there might not even be an attempt at defending. Easier to let one slip by than risk a ruling that says these sales are all void.

But here is the rub. You can kick the can down the road for only so long. It doesn't change the facts. NONE of the creditors filed foreclosure actions or sales in any of the securitized loan transactions. NONE of the creditors even knew the loan was not performing because they were being told quite the contrary by the very same group that declared the loan in default. ALL of the loans had co-obligors who in fact did pay but were not disclosed to either the borrower or the actual lender (investor). NONE of the notes were assigned at or near the time of the closing of the loans. NONE of the security interests were assigned at or near the time of loan closing. NONE of the notes or security interests were endorsed or even transmitted to anyone after the loan closed unless the case went into litigation in which case they either "found" or re-created the documentation without admitting what they had done.

NONE OF THE OBLIGATIONS WERE COMPLETELY DESCRIBED IN THE NOTE, MORTGAGE OR DEED OF TRUST. AS PAUL HARVEY LIKED TO SAY, THE "REST OF THE STORY" WAS IN THE MORTGAGE BOND, PROSPECTUS, PSA, ASSIGNMENT AND ASSUMPTION, INSURANCE CONTRACTS, CREDIT DEFAULT SWAPS, TRANCHE

STRUCTURING THAT THE LENDER RECEIVED. As I said at the beginning of this blog, this is all going to come down to two doctrines that are inescapably in favor of the homeowners and borrowers, including the ones who THINK they lost their homes: the single transaction doctrine and the step transaction doctrine. NONE of the actions of the securitization intermediaries would have any business reason to occur without the investment by the lender (investor) and the acceptance of the obligation by the borrower. That makes it ONE transaction between the investor and the borrower no matter how complicated you WANT to describe it.

THE ONLY THING THAT WAS ACTUALLY MOVED WAS MONEY UNDER QUESTIONABLE CIRCUMSTANCES. A SPREADSHEET WAS USED AND SENT ELECTRONICALLY UPSTREAM TO TRANSMIT THE ALLEGED RECEIVABLES THAT WOULD BE CLAIMED AS PART OF POOLS THAT WERE NEVER OFFICIALLY FORMED. THE TERMS OF THAT TRANSACTION INCLUDED CO-OBLIGORS WITHOUT WHICH THE LENDERS WOULD NOT HAVE ADVANCED THE FUNDS FOR WORTHLESS (AND IN MANY CASES NON-EXISTENT) MORTGAGE BONDS.

THE WAY THEY DID IT WAS SIMPLE: GIVE THE BORROWER MONEY, HAVE THE BORROWER SIGN A NOTE TO A SHAM ENTITY AND GIVE THE LENDER EVIDENCE OF A BOND WHICH HAS ENTIRELY DIFFERENT TERMS FROM THE NOTE. THAT WAY THEY COULD USE PLAUSIBLE DENIABILITY AND PLAUSIBLE EXCUSES FOR NOT SHARING CONFIDENTIAL INFORMATION WITH THE ONLY TWO REAL PARTIES TO THE TRANSACTION — THE BORROWER AND THE LENDER.

So they wait until nobody is looking, for that moment that appears clerical (ministerial) in nature and then they slip in new entities again, thus cheating the lender (again), but leaving the homeowner with legal title. The homeowner walks from the deal thinking it is over. But in truth, it is only just beginning. Now we enter the NEXT chapter of the mortgage meltdown."

Sanders declares that the Trustee's Sale of their home should be enjoined for the above-cited reasons, and for the following reasons, some of which have not been made known or clear to this court heretofore due to the dereliction of duty and gross violations of the Ethics Rules of the State Bar of California, amongst other things, of present counsel, **Jason Wallace Estavillo**, California Bar Number 188093. Thus, as a preliminary matter, if it pleases the court, Plaintiffs respectfully request that counsel of record, Jason Wallace Estavillo be removed from the case and Plaintiffs substituted In Pro Se, until Plaintiffs obtain *competent and truthful* counsel. Unlike the way present counsel through inaction, lies and deceit has failed to deliver on many "promises," in no way do Plaintiffs intend to drag their feet but will get on with prosecuting this case in an exemplary manner. The following are Plaintiffs chief complaints against counsel:

1. After payment in excess of $32,000 to counsel (EX-5), and sporadic invoices **not showing or crediting check payments made**)), counsel, in spite of repeated requests to show/reflect **actual check payments made** and to provide regular monthly invoices and not sporadic ones, has completely failed to provide ***anything*** to explain the manner in which

**FIRST AMENDED COMPLAINT** - 7

payments have been applied ("if" they've been applied). It is our understanding that the State Bar Ethics rules requires attorneys to provide *regular* monthly billings so as to apprise clients of the work for which counsel expects to be paid, and in turn clients are to receive credit for payments made, all of which must be clearly reflected in regular monthly invoices and/or statements, not sporadic ones that fail to show or credit payments made since the just prior monthly invoice.

2. Counsel failed to amend the Complaint though he promised to do so, to include new causes of action discussed with counsel, and to include pertinent exhibits that the court should be made aware of.

3. Counsel procrastinates to the extreme even when he does finally do something that must be done to efficiently move the case forward, rather than "milk" Plaintiffs herein by taking our case, then hitting the "brakes," to drag out proceedings unnecessarily and drain Plaintiffs' meager finances dry to the point we cannot buy groceries and pay utilities or only do so by borrowing from others or pawning to make ends meet.

4. **Counsel lied to this court**. Counsel knew, or should have known, that when he prepared the Civil Cover Sheet, the same case with the same parties with the same circumstances and upon the same subject matter, had **once before** been before this court and this judge. What counsel did was unknown to Plaintiffs for counsel did it without disclosing his intention(s) to Plaintiffs.

5. After the above debacle, Plaintiffs began to comb the Internet to see if anyone else was experiencing "problems" with Jason Wallace Estavillo. Immediately a complaint turned up. The complaint was similar to ours. The other party had been "milked!" The other party did not obtain what was promised. The other party was distressed and disturbed by conduct of counsel. That complaint, verbatim, with proper reference cited, is below, also, separately, an html link is provided for the court's convenience here: http://www.yelp.com/biz/law-offices-of-jason-w-estavillo-oakland-2:

"Dishonest with unprofessional support staff! DO NOT GIVE YOUR MONEY AWAY!!! Jason presented self as an honest and efficient attorney when I contacted him regarding pending auction of my house. I explained that having my ex-fiancé quitclaim his rights was going to be our biggest challenge in getting a loan modification in my attempts to save my home. He asked me for $7000 retainer

**FIRST AMENDED COMPLAINT** – 8

fee and $2000 monthly payment. Despite considering this expensive, I trusted him and retained him. He stated that he would do everything to keep me in my home. Close to $16,000 later, all he has accomplished is POSTPONE auctions. He shamelessly charges me to tell me what I already knew, " lender needs a quitclaim deed from your ex for you to apply for a loan mod " NO $#!". Then he tells "your ex won't sign". Again, "NO $#!" Then he has the nerve to remind me to make my monthly payment. He was simply dragging the case to charge me before reaching the max # of times you can postpone an auction. When I had questions, he used legal jargon and was sarcastic in response to my request for further clarification. His assistant was rude and never had answers to anything. EXPENSIVE, RUDE, DISHONEST, DIFFICULT TO GET A HOLD OF, A COMPLETE HUMILIATING NIGHTMARE!" (Formatting unchanged from original.)

6. Plaintiffs checked out counsel on the State Bar of California's website but found nothing after doing an attorney name search.

7. Next, and prior to hiring counsel, Plaintiffs searched counsel's name on the Internet and discovered that a judge in a case where counsel here was counsel there, referred counsel for investigation to the State Bar of California for filing an appeal solely for delay. That information and a link thereto can be found here: **http://www.longlevit.com/2012/04/jane-brown-v-wells-fargo-bank-na-2012-204-cal-app-4th-1352/**

Another case for concern can be found here:

**http://www.plainsite.org/dockets/wkoynesr/superior-court-of-california-county-of-san-francisco/the-education-resources-institute-inc-v-jason-w-estavillo-et-al/**

Still another case, here:

**http://www.plainsite.org/dockets/10z5oi8gd/superior-court-of-california-county-of-santa-cruz/ruben-jauregui-et-al-v-capital-crossing-servicing/**

Following is the case with the referral to the State Bar but from a different source with a different take:

**http://caselaw.findlaw.com/ca-court-of-appeal/1598938.html**

Put more cogently:

**FIRST AMENDED COMPLAINT** - 9

http://www.longlevit.com/wp-content/uploads/2012/05/2012-04-16-Brown-v-Wells-Fargo-Bank-NA.pdf

Yet another, and *disturbing*, complaint:

http://www.plainsite.org/dockets/10z5oi8gd/superior-court-of-california-county-of-santa-cruz-ruben-jauregui-et-al-v-capital-crossing-servicing/

Plaintiffs questioned counsel specifically about his being referred to the State Bar. Counsel remarked that it was "nothing." He said words to the effect that as between him and the judge in the case, there was a **difference of opinion** and methodology. Because counsel's explanation seemed reasonable at the time, Plaintiffs retained him. But now, in hindsight, we should have known better. Everything said in these various "complaints" and the accusations against Jason Wallace Estavillo, are not speculative, they are "concrete" complaints to those that have had direct face-to-face contact with him, as has this court, the court of the Hon. Andrew Guilford. While counsel may be good at **blowing smoke**, he traps his clients in a web of deceit.

Witness the following first-hand, eyewitness account: Plaintiffs are represented by counsel in a different case in state court, albeit Bank of America purports (now) to hold the loan. Plaintiffs' Complaint was filed by a different law firm. Instant counsel was hired to replace the former law firm. Counsel has been counsel of record in that case since about November 2014. One reason counsel was hired was to amend the initial Complaint and include causes of action and exhibits that the prior firm did not. However, again, counsel dragged his feet, *procrastinated*, and, to our disappointment (and perhaps ultimate defeat in the action) miserably failed to amend the Complaint. Furthermore, counsel failed to timely provide discovery or provide a proper and adequate defense to requests for sanctions by opposing counsel. As a direct and proximate result of counsel's inaction, Plaintiffs were sanctioned approximately $3000.00. That's a lot of money for Plaintiffs. Mrs. Sanders receives $570.00 social security. She will be 78. But what galls Plaintiffs is that counsel, Jason Wallace Estavillo, "skated" away from threatened sanctions by your Hon. Andrew Guilford, getting a "free pass," while his clients Marshall Samuel Sanders and Lydia Ong Sanders, both severely disabled, get "crucified!" So, if we don't part company from counsel, Jason Wallace Estavillo, Plaintiffs will spend the rest of their lives destitute and sick(er).

For the reasons above, and many more that will go unstated to move this matter along, Plaintiffs respectfully petition this court to forcibly remove "attorney" Jason Wallace Estavillo from this case, substituting him out and substituting in, Plaintiffs Marshall Samuel Sanders and Lydia Ong Sanders, unless or until competent (and honest) counsel can be found to assist Plaintiffs in spite of very limited resources. That's it for "housekeeping."

Moving forward, and taking up the purpose of this Motion, the facts are:

## DEFENDANTS ARE DEBT COLLECTORS

*See Amicus* brief exhibit attached, or go to link: http://stopforeclosurefraud.com/wp-content/uploads/2015/08/201508_cfpb_amicus-brief_ho-v-recontrust-n.pdf

1. Plaintiff's home is in foreclosure (EX-47; 48, showing two (2) different companies each reporting the upcoming Trustee's Sale).

2. Defendants have scheduled a Trustee's Sale for September 22, 2015 at noon (EX-47; 48).

3. The following are specific reasons why Plaintiffs believe Defendants lack standing to foreclose:

a. Plaintiffs exercised their Truth-in-Lending Act ("TILA") right of rescission as to the "loan" to be foreclosed, and thus, under *Jesinoski v. Countrywide Home Loans, Inc.,* 574 U.S. ___, 135 S. Ct. 790 (2015)(EX-35), the "loan" is void, *not voidable*. The instruments, the Note and the Deed of Trust were rendered void by placing them into the post (mailbox rule). ***By operation of law***, at that precise moment when the TILA rescission (*not common-law rescission*) left Plaintiff's hands and entered into the post, the instruments just described were rendered null and void. Nothing on Earth could change that fact, because, according to TILA, according to The Federal Reserve, according to Regulations X and Z, according to Congress, and finally, and notably, according to Justice Anton Scalia speaking for a unanimous Supreme Court of the United States in *Jesinoski*, all a homeowner must do to effect TILA rescission is to place a writing with such intention on it into the post. That's it! Done! So, since Plaintiffs *former* "loan" is void, Defendants are estopped to foreclose. Even under California's non-judicial foreclosure statutory scheme, Defendants are estopped to foreclose because they have "nothing" to foreclose upon but **void instruments**. This is but another reason that this court should hold that under

*Jesinoski*, Plaintiff's "loan" is void. For this reason, Defendants must be enjoined from getting a "free house!"

b. Under *Security Pacific National Bank v. Wozab*, 51 Cal. 3d 991 (hereafter, *"Wozab"*), because Bank of America, a Defendant herein, after the loan that is the subject of this Motion was subjected to foreclosure (later rescinded by Bank of America (EX-17: **Rescission** of Notice of Default), took without consent, privilege or authority, Plaintiffs' entire bank account (then at Bank of America), force-closed it, applied the funds to the purported "debt" as an offset of the amount claimed by Bank of America to be due to them under the terms of the deed of trust, that, instead of foreclosing, if that is what Bank of America believed it had a lawful right to do, Bank of America went for the low-hanging fruit *first*. Plaintiffs funds then on deposit at Bank of America, and in doing so, cut off from itself the availability of the California non-judicial foreclosure process, indeed, cut off foreclosure altogether under any method, because here in California we have the *"Security First"* rule, also known as and sometimes referred to as, the **one-form-of-action** rule. So, Bank of America picked its "poison" and forever estopped itself from using the remedy of non-judicial foreclosure of the security interest if that was what it planned to do in regard to Plaintiffs' home. Bank of America took to itself Plaintiffs' funds on deposit at their bank, and then offset the balance Bank of America believed to be due them. This act was done instead of foreclosing *first*. Thus Bank of America, for all of the above-stated reasons, and this one here, *Wozab*, has voluntarily "elected" its one-form-of-action, and under the rule here in California, has already availed itself of its *one* remedy. Bank of America doesn't get to go around and glean low-hanging fruit here and there and everywhere, and then come back and *foreclose also*. Isn't one remedy enough? Bank of America just can't get seem to get enough "free houses!" For the foregoing reasons, Plaintiffs respectfully encourage this court to drill down and see just who is attempting to get a "free house," a free bank account, free equity, free down payment, free monthly payments, free interest and free asset build-up off someone else's back.

c. Moving forward, let's take up the issue of **Assignments**. Plaintiff understands that throughout the entire state of California, both State and Federal courts are loathe to hear the word "Assignment" coming from a homeowner. There is another word courts in California hate: *Glaski. See* http://www.greenhall.com/Glaski_Article_May_2014.pdf

Let's start with *Glaski. Glaski v. Bank of America, N.A.*, 218 Cal.App.4th 1079, 1099 (Cal. Ct. App. 2013) *may*, together with *Yvanova v. New Century Mortgage Corp., Boyce v. T.D. Service Co. 2d Civil No. B255958 (Super. Ct. No. 1438504) (Santa Barbara County), Mendoza v. JPMorgan Chase Bank, C071882 (Super. Ct. No. 39201100267960CUORSTK), Keshtgar v. U.S. Bank, N.A.*, 226 Cal. App. 4th 1201 (Cal. App. 2d Dist. 2014) all of which are sitting in front of the justices of the Supreme Court of California with an anticipated decision arriving this Fall. The issue in each case is whether a homeowner has standing to challenge a "late" or post-Real Estate Mortgage Investment Conduit ("REMIC") cut-off date for a valid transfer of their loan into a mortgage-backed securities pool. Said differently, does a homeowner have standing to challenge "lender"-initiated "musical chairs" with the chain of their title such that the real party in interest in unascertainable, giving rise to "wild deeds," loss of home ownership, fraudclosure by strangers to the homeowner's title, and exceedingly deceptive acts and practices by predatory lenders, servicers and trustees, all to the injury of homeowners but to the decidedly lucrative billions and billions of dollars of "play money" Wall Street and third-party interlopers have swindled hard-working homeowners and families out of, and also, fraudclosed on them, and evicted them, and in the process, earned billions and billions of dollars, by placing side-bets that these same homeowners would default after these racketeers-turned-banker's deflated the bubble they hoodwinked homeowners into borrowing into and out of. Essentially, it's a racket that demolishes homeowners (EX-41), families (EX-41), communities and schools (EX-41), while at the same time, enriches the "drivers" of the bubble and its controlled-downforce and upforce, collecting from derivatives, collateralized debt obligations ("CDOs"), third-party co-obligors, "default" insurance contracts placed on each tranche of the pooled securities, and endless high-frequency trading ("HFT") options and derviatives all tied to the "hard-working" breadwinner and homeowner who doesn't have a clue what is happening other than someone is foreclosing on his or her home whose name doesn't mean a thing to him or her. But the truth here is deceptively simple: after collecting on every conceivable kind of "bet," lenders, servicers, trustees, foreclosure mill attorneys and everyone else tied by their umbilical cord to this cash cow of fraudclosure, when all is said and done, and just when it seems that it just couldn't be possible to pull out any more money from a single solitary loan, fraudclosure works a forfeiture, and now, the whole gang of fraudclosers, who couldn't possibly do what they

1  do and earn the kind of money that they earn without the assistance of the judiciary, the judicial

2  system, and law enforcement to carry out forcible evictions, even at gunpoint, giving "banks"

3  another of the millions and millions, so far, with more on the way, "free houses." Winston
   Churchill remarked, regarding Hitler's relentless bombing of London during WWII, "Why make

4  the rubble bounce?" The analogy to the horrific effects of fraudclosure is hard to miss, "Why

5  steal a house after you have already "collected" multiple times on the original sum lent by others,
   not even lent by you?" Just how many times does the same "debt" have to be paid and

6  extinguished before bankers are satiated? Ironically, it is the judicial system that is top-heavy in

7  their oversubscription to mortgage-*un*backed securities. So at least some few homeowners who

8  know the truth will have the pleasure one day of seeing judges' pensions and the judicial
   systems' investments collapse under the weight of those toxic, empty pools of *un*backed

9  securities "investments," then it won't sting so badly when that homeowner recalls how the

10 court's didn't drill down deep enough to understand what was really going on, and who would

11 pay the ultimate price.

12     All of which is to say that this court is encouraged to enjoin Defendants from getting another
   "free house," this particular one at Plaintiffs' expense, **pending review by the Supreme Court**

13 **of California in** *Yvanova, Boyce, Mendoza, Keshtgar* and other cases, such as the instant case

14 (see all of the attached four (4) Assignments (EX-13-16), particularly Assignment No.1 (2009)

15 (EX-13), transferred post-PSA (EX-44) cut-off nearly three (3) years after the prohibition against
   transfer mandated by the Pooling and Servicing Agreement ("PSA") (EX-44) (*see also* EX-45:

16 Prospectus and Prospectus Supplement).

17     While *Yvanova, Boyce, Mendoza,* Keshtgar and a host of other cases have one or two of the

18 major causes of action that courts nationwide are just beginning to alter their opinions on,
   Plaintiffs' instant case touches and concerns *all* of those major themes and many, many others.

19 For these reasons and more, it would be tragic to give Defendants another "free house."

20     Let's discuss bankruptcy. Enough has been said by Defendants about Plaintiffs' attempt(s) to

21 reorganize their finances on extremely limited income. While things used to be much better, they

22 have deteriorated, as has our health, and that of our adult disabled daughter. Nevertheless, under
   the law, Plaintiffs are entitled to make good faith efforts to reorganize, even if it appears to

23 Defendants that Plaintiffs are only trying to prevent the (unlawful) foreclosure of their family

24

**FIRST AMENDED COMPLAINT** - 14

1    home. There isn't anything criminal about trying to reorganize, even though Defendants criticize

2    Plaintiffs' circumstances, past, present, and future as indicative of "bad faith." Suffice it to say

3    that Plaintiffs are sincerely attempting to reorganize their finances around the possibility that
     there may be relief in the future depending upon circumstances and court decisions, e.g.,

4    *Yvanova*, which "if" upheld (and no one has a crystal ball to know which way the decision will

5    go), could have a dramatic effect upon Plaintiffs' ability to reorganize. It does indeed look bleak
     now, but no one knows what the future holds. Plaintiffs simply plead for this court to enjoin

6    Defendants from auctioning Plaintiffs' home, and thereby not just stripping Plaintiff's of their

7    family home but eliminating what could be the only hope of reorganizing. We only ask for a

8    chance.

9        This is a good place to end this discussion and not drag out facts, cases, exhibits and the like,
     though Plaintiffs could if called upon by this court to do so, go into great specificity.

10       In closing, irreparable harm would be done to Plaintiffs' property, their abode, their

11   reorganization, and their health, if this court fails to enjoin Defendants, and in the absence of any

12   bond whatsoever, for the requirement to post a bond of any dollar amount would in this instance
     be tantamount to a failure to enjoin, even if the court were to enjoin, for it is not possible for

13   Plaintiffs to post a fully-collateralized court bond, in any amount. Besides, being in bankruptcy

14   has sent Plaintiffs' credit reports and scores to credit "Hell!" Plaintiffs couldn't get a bond unless

15   it fell from Heaven!

16       For all the reasons above-stated, and many more, may it please the court to enjoin
     Defendants, based upon a balancing of the equities, of which there are none in Defendants favor

17   where according to the California Attorney General's Complaint and Stipulated Judgment and

18   Injunction, Bank of America (Countrywide), Defendant herein, stole from unsuspecting
     homeowners by myriad schemes, including non-existent force-placed insurance, and a plethora

19   of other "captive" financial and real-estate-related fees for "services" that unsuspecting

20   homeowners paid to Bank of America, which in and of themselves were predatory (see

21   Stipulated Judgment and Injunction). Such was and is the circumstance with the instant case and

22   "loan," a predatory *per se* loan (EX-7).

23       May God grant this court wisdom to drill down into Defendant's **standing**, examine the chain
     of title, allow discovery of whether or not the "loan" has heretofore been **paid-in-full**, and

24

**FIRST AMENDED COMPLAINT** - 15

whether **proper credit** to the loan balance has been afforded Plaintiffs. All this hinges on whether or not the court holds that America's Wholesale Lender **does not exist** nor ever has and for that reason, the "loan" is a nullity. An **accounting** is sought for loan-specific payments, and more importantly, the **contractually-obligated** payments on the loan by third-party co-obligors with whom derivative and insurance contracts were taken out by "lender" and /or third-party affiliates of lender at lender's instructions, triggered by AWL's/CWB'S (false) declaration of default. These Assignments (EX-13-16) lacked **valid delivery**, **consideration**, and all of the other essential elements of a contract. There are "breaks" in the chain-of-title and failure of seisin. Defendants cannot muster ***standing*** to foreclose. The mantra that *somebody* has the right to foreclose is ludicrous (EX-36-42.1). Here, Plaintiffs **deny default**. This places the burden upon Defendants. Via appropriate discovery tools Plaintiffs will seek  to **open Defendants' books, all sets, and their accountants' books, all sets** in order to reveal who paid what to who, and to whose account payment(s) have been credited. **Consideration** goes to the heart of the issue of **standing** since only the one *entitled* to foreclose can foreclose. If through appropriate discovery and depositions accounting reveals that the subject "loan" has been retired, paid-in-full, even years ago, disgorgement will be sought.

## AMERICA'S WHOLESALE LENDER

It would be negligent of Plaintiffs if they did not reveal to the court by way of exhibits, that nearly every page of the one hundred plus pages of documents dumped on Plaintiffs to sign at the loan signing process, is emblazoned with the "company" Plaintiffs dealt with—America's Wholesale Lender ("AWL"), a fiction! For this reason, alone, there could never have been a bona fide loan "closing" or "consummation," since under *Borgonovo v. Henderson*, 182 Cal. App. 2d 220, escrow is a **neutral** third party, and not the errand-boy of "lender," here AWL.

See the three (3) differently signed Note versions (EX 10-12). Version number one (1) *may* have been signed at First American Title Insurance Company ("FATCO"), Escrow Department, the others do not contain Plaintiffs' signatures; ***they are forgeries***. There are **clear breaks** in the signature lines, indicative of the use of whiteout. There are **large check marks** on the face of Note version number two (2)(EX-11) and Note version number three (3)(EX-12). This makes the Notes, ***all of them***, void, since between the time that Note version number one (1) came into existence, and the time Note version number two (2) surfaced, and that when these purported

"creditors" who are not creditors, Bank of America and Wells Fargo Bank, on the occasion of the submission to the bankruptcy court of the Hon. Erithe A. Smith, Bank of America, submitted the Proofs of Claim containing the false, forged and fabricated Note versions (see attached) "scrubbed" the original Note (version number one (1)) and magically made a new one. Is this an enforceable instrument that this court is going to permit to be foreclosed upon? Plaintiffs did not sign this instrument. The instrument does not even purport to be signed by Plaintiffs!

Coupling the fact that the "closing" could not have occurred because the "lender" was not only a **fiction**, but this was a **predatory loan**, and the real lender, the real party in interest, was **actively concealed** from Plaintiffs. Had the truth been known to Plaintiffs, Plaintiffs would have exercised their TILA right of rescission right *then*, permitting them to forego the loan and attempt to find another lender, one that would not play games.

A quick recap demonstrates, amidst a ***significant number*** of substantiating exhibits, and in spite of the incompetence of counsel to bring forth the facts and the law (and not to milk his clients, Plaintiffs herein), that America's Wholesale Lender, an utter fiction, *Armeni v. America's Wholesale Lender*, 2012 U.S. Dist. LEXIS 9672 (C.D. Cal. Jan. 25, 2012)(EX-33), constituting fraud in the factum and fraud in the inducement, "sat in" for the real party in interest, making America's Wholesale Lender, a *pretender* lender, is ordered or orders another, to alter the Note (see attached closing document that says Mrs. Sanders ("spouse") was not to sign the Note), and so, someone, most logically First American Title Insurance Company, Escrow Department, officers or staff, or Notary, whited-out or otherwise removed Mrs. Sanders' signatures, a total of two (2) separate signatures signed in two (2) different capacities, in order to satisfy a condition of "closing," but in so doing, "closing" was tantamount to a "trick" (*Borgonovo v. Henderson*, 182 Cal. App. 2d 220). This was a **sham** "closing" at best. At worst, it was a violation of the fiduciary duties of a neutral third party escrow agent/company, implicating First American Title Insurance Company and/or First American Title Insurance Company, Escrow Department, or America's Wholesale Lender, or The Bank of New York (see wire transfer instructions)(EX-9). The truth is, without a trial on the merits, and way before that, without the upcoming Trustee's Sale being enjoined, and absent robust discovery, the truth may never be known. So, we can't even get out of "escrow" without every conceivable rule of third party neutrality and fiduciary responsibilities having been wildly breached, and that without remedy, such that, today, we have

**FIRST AMENDED COMPLAINT** - 17

1  a convoluted web of deceit where banks go about the daily business in this State, California, of

2  **preying** on unsuspecting homeowners, the hard-working folks that made and make and will

3  continue to make this country great, only to be robbed of their property with the aid of the courts
   and law enforcement, in order to give the banker's and Wall Street and the Too-Big-To-Fail and

4  Too-Big-To-Jail banks and banksters one more "free house!"

5      Assuming this court finds no prejudice in anything said heretofore, with the mantra, "You got

6  the money didn't you?" The short answer to that question is, "Yes, we got *some* money, but we

7  were cheated out of *most* of the money. What we had been promised was not delivered. Worse,
   we had been dragged past the point of no return. There was no turning back. It was too late. We

8  had been taken "prisoner" by AWL. AWL ran the clock on us. We were out of time and out of

9  luck. We were stuck. What we didn't discern was that we were going to be foreclosed on. AWL
   pre-planned and pre-arranged to default us. But it was too late for us. We had no chance to look

10 for an "honest" lender. It was too late. Had we known any of this we would not have refinanced.

11 The "refinance" we entered into with AWL was intended by AWL to result in foreclosure from before

12 the "loan" even originated. This is beyond vanilla-flavored fraud. This is diabolical. Even the demons of
   Hell itself couldn't think this up! We had just exchanged our home, our equity, our down payment,

13 capital improvements, interest and payments made for a lit fuse: foreclosure and eviction. We had

14 exchanged our home for delayed-demolition of our home, our family, and our future. What
   happened to all those politicians and their talk of "consumer protection?" Where is it when you

15 need it?

16     Let's look at this particular issue with a different lens: Plaintiffs made a down payment on the

17 home that is threatened to be fraudclosed, together with immediate and necessary repairs due to

18 neglect; weather, long-absence of the sellers before Plaintiffs-buyers came into the picture, of

19 approximately $400,000.00, including $100,000.00 that the seller at the last minute reneged on
   (this was in 2003, at the time of purchase, and not at the time of refinance, which refinance was

20 in 2006, and is the subject matter of this Motion), roughly $50,000.00 as a prepayment penalty

21 that America's Wholesale Lender agreed to waive but instead reneged also at the least minute,

22 at the time of loan signing, and roughly $25,000.00 for a tier one yield spread premium. In other

23 words, Plaintiffs were "robbed" and "cheated" *after* they had passed the point of no return and
   were sitting down signing loan documents, predatory *per se* "loan" documents, unbeknownst to

24

**FIRST AMENDED COMPLAINT** - 18

them at the time. Subsequently, and immediately after the purchase (2003), undisclosed defects, exceedingly major ones, including massive hillside slope destabilization issues and pier-and-post footing and foundation problems surfaced, forcing Plaintiffs (Buyers then) to be forced to spend over $600,000.00 to correct (not a dime was spent to upgrade, remodel or enlarge, but only to **correct** construction defects). This then adds up to over $1 million dollars sunk into the home. So, as further persuasion to encourage this court to enjoin Defendants' obtaining another "free house," may it please the court to take judicial notice (see Exhibits to come of receipts and checks paid). Plaintiffs herein have over $1 million dollars invested in their family home. Thus, if someone, anyone, or Defendants fraudclosed Plaintiff's home, the Defendants and "bank" would not only get a "free house," but one million dollars ($1,000,000.00) of Plaintiffs' hard-earned sweat and equity. It isn't hard to see that in terms of balancing the equities, in light of the revelations regarding post-REMIC cut-off failure to transfer the Note and Deed of Trust into the "pool," and in light of *Wozab, Yvanova, Boyce, Mendoza, Keshtgar* and a host of other cases stacking up presently at the **Supreme Court of California**, Defendants do not have any skin in the game, they do not have one dime invested in Plaintiffs' home, either the "loan," or the property, and certainly not Plaintiffs' lives, such that the court should enjoin the upcoming Trustee's Sale and not allow another "free house" to go to Defendants, none of which has a penny at stake.

A lot has been said of late about unclean hands, particularly by courts nationwide dealing with fraudclosure and securitization fraud. Both the investors and the homeowners have been defrauded by the Too-Big-To-Fail and Too-Big-To-Jail banks and banksters. The only one it can't be said about is the hard-working homeowner slaving away to pay their predatory loan, and in Plaintiffs' case, their predatory *lawyer*, Jason Wallace Estavillo. Plaintiffs accept that, but just don't leave us yoked (slavery?) to Jason Wallace Estavillo! Kindly use the court's powers, sua sponte if necessary, to separate lawyer from client, Plaintiffs herein, and then once lawyer is substituted, kindly permit Plaintiffs to substitute in, unless and until, other and competent counsel substitutes is found.

The "loan" at issue, it is the position of Plaintiffs herein, never saw the light of day, never got out of the gate, never made it out of escrow, was never consummated, nor could it have been, for the whole "escrow" was a unilateral exercise of the overwhelming financial strength and power

of third parties and not Plaintiffs herein, a bona fide breach of the implied and express statutory covenants of good faith and fair dealing. Such that, instead of Plaintiff's refinance escrow being in the hands of a neutral third party escrow officer owing a duty and fealty to both sides of the transaction, became instead, unbeknown to Plaintiffs, captive to the interests inimical to Plaintiffs interests. Instead of a neutral third party looking out for the good of others in privity of contract with one another, AWL in instructions to FATCO destroyed privity and replacing it with a contract of adhesion, a one-sided boiler plate set of escrow instructions that the pretender lender had dominion and control over through the escrow officer, all unbeknown to Plaintiffs herein.

Rescission, Assignment, and everything else, don't even need to come into play, much less be decided upon or discussed when the "loan" never saw the light of day, never got past the back door of escrow, indeed, never made it out of the door of escrow at all. At all points the "loan" by the pretender lender, was "dead on arrival." Origination was void. Escrow was void. There never was consideration. There was fraud. There was fraud in the factum and fraud in the inducement. Indeed there was active concealment at every step in the refinance. Plaintiffs had no chance in the world of discovering what was happening.

If this court holds that Defendants have standing and are entitled to foreclose and fails to enjoin imminent fraudclosure of the Sanders home, it won't be due to a lack of Plaintiffs' efforts to bring to the court's attention, with great specificity and supporting exhibits, evidence that belies all of these Defendants' contrary arguments and assertions, yet if this loan, any of these securitization fraud "loans" were real, why then won't any of the pretender lenders open their books and permit discovery?

What we have here is a scheme by AWL, aided and abetted by FATCO, to separate Sanders from their home, down payment, equity and capital improvements paid for through the efforts of Sanders, strip it from Sanders, and give it, without cost, to the Too-Big-To-Fail and Too-Big-To-Jail banks and banksters, all this on top of, the Sanders house, free.

Plaintiffs' "free house" has cost them in excess of one million ($1,000,000.00) dollars. What kind of *"free house"* is that? One problem with the statement is that in just a few days that "free house" is going to go to Bank of America, courtesy of, and with the help of, court, *maybe*, and then *Bank of America* will get the "free house," and Plaintiffs will lose their house. The issue

**FIRST AMENDED COMPLAINT** – 20

was never really about a free house, but about which side was going to *get* the free house, and so far, all of the "free houses" are ending up with the side with the most lawyers, the most lobbyists (bribesters), the most money (printed at taxpayers' expense and then "loaned" back to those same taxpayers at interest—nice con game upon Congress many years ago, that most people don't have a clue about). So, it's all a big con. America's Wholesale Lender was just one "bank" Plaintiffs had the misfortune of encountering and now stand just days away from forfeiting their home to, that in essence is a one million dollar "free gift" and "free house," which cannot occur without the aid of court, and local law enforcement, by force of arms if necessary, removing occupants *as necessary*, including crying adults, women, children, babies, and pets, as their means of persuasion to separate homeowners and their families from their possessions and turn over "free gifts" and "free houses" to panting banks and banksters, the "local" faces of Wall Street's financial stranglehold on Main Street by clever but criminally-minded, greed-gone-wild racketeers in pin-stripe suits, male and female, with the females as depraved and greed-driven as any "beast" of Wall Street, bear or bull.

### <u>FAILED PROMISES, LACK OF NEUTRALITY, AND PREJUDICE: THE NOTE IS A FORGERY THAT DEFENDANTS AWL/CWB SEEK TO ENFORCE, FABRICATED SOLELY FOR THE PURPOSE OF LAYING A FOUNDATION TO REQUEST JUDICIAL NOTICE AND SEEK RELIEF FROM STAY OR DEFEND AGAINST RESTRAINING ORDERS</u>

Defendants AWL/CWB, and FATCO, failed to comply with certain **conditions precedent** to the close of escrow. Because the conditions precedent failed, escrow remains "open." Because escrow remains open, **consummation** has not occurred. Since escrow has not closed and consummation has not occurred, for purposes of the Truth-in-Lending Act ("TILA"), in this instance, under these peculiar circumstances, and under the particular and specific facts of this case, *both the three-day and three-year right of rescission yet remain exercisable.*

The following are failed conditions precedent:

1. "NOTE TO BE RESIGNED BY MARSHALL ONLY. SPOUSE WAS NOT TO SIGN" (quotation marks added).

AWL (a non-existent entity)/CWB ordered "escrow" (see ****ESCROW CONDITIONS****) (kindly see the page with black, bold-faced type that states: "YOUR LOAN

HAD FUNDED!") to commit fraud. AWL told FATCO to order the "Broker" to provide a "new" Note, removing Mrs. Sanders' signatures (two of them) (See Note with four (4) signatures; two (2) of Mr. Sanders and two (2) of Mrs. Sanders.)

We can be sure this is what transpired since this "new" Note surfaced for the first time when BA submitted the "new" Note upon filing various proofs of claim in Plaintiffs' bankruptcies. These proofs of claim had the new Note attached. The new Note had large, bold-faced check marks across its face. The signature page unequivocally and irrefutably deleted Mrs. Sanders' signatures and the capacities in which she originally signed. This new Note was entirely forged, fabricated and altered so as to lay Defendant BA's foundation to foreclose, seek relief of stay, continue to illegally pursue collection and continue to report the "debt" as plaintiffs' personal liability, though their personal liability had been discharged years earlier.

The reason this constitutes fraud is because Mr. and Mrs. Sanders did not consent to forged signatures, nor would they have. America's Wholesale Lender/Countrywide were Hell-bent to close escrow and obtain one million ($1,000,000.00) dollars to pay off their existing loan (this was a refinance). The "broker" wanted his tier one yield spread premium of $21,525.00. FATCO wanted their fully-earned-in-advance and non-refundable title insurance premium, their escrow fee, and a slew of other stacked "garbage fees" and "kickbacks."

Because Defendants AWL and FATCO crafted a *new* Note without consent or privilege, or allowed such a Note to be crafted, each knew, or should have known, that their one-sided, unilateral acts prejudiced the rights of Plaintiffs. Plaintiffs entered into an escrow. Plaintiffs had a *reasonable expectation* of neutrality of the escrow holder, here, FATCO. No matter which way this escrow is looked at, no matter how viewed, Plaintiffs were deceived by actions of others, here, AWL, CWB, and FATCO, and any others acting in concert with them, or aiding and abetting this deception and fraud.

Plaintiffs would never have entered into such a one-sided escrow had the true facts been disclosed to them. Here, escrow had a duty to Plaintiffs to be neutral. Instead, together with others, Defendants and escrow, FATCO, injured and prejudiced Plaintiffs by failing to reveal that the Note they signed was unilaterally altered, a *new* Note was fabricated with forged signatures, and the new Note was placed into the "new" loan documents, title insurance documents, and other documents intended to be used to effectuate the *close* of escrow.

**FIRST AMENDED COMPLAINT** - 22

So, here, "escrow" could **_not_** have "closed." This was a sham "escrow" and a sham "closing" to expedite very large payments, commissions, fees (legal and illegal) to Defendants and Defendant affiliates. This was only made possible by Defendants' deceit, and the cooperation of FATCO in deceiving Mr. and Mrs. Sanders. It was Mr. and Mrs. Sanders who were refinancing. They had every reasonable expectation of neutrality. The Sanders' were the ones encumbering their property. The money was flowing to Defendants. The Sanders were going into debt and giving a security interest in their home to ensure repayment of the debt. The least the Sanders' were entitled to was neutrality. Yet, that is not what occurred. Instead, FATCO, acting in concert with AWL and the source of the table-funded loan (predatory *per se* loan) (see "wire instructions"), The Bank of New York, enriched themselves at Plaintiffs' expense.

Escrow's priority was to close *regardless of financial damages or injuries* or other costs to the Sanders'. Nothing was going to stop, hinder or delay escrow, even a *reasonable* duty of care owed to the Sanders'.

A condition precedent was that escrow not act in a manner that prejudiced the rights of the Sanders' while giving to Defendants, AWL/CWB, what was being subtracted from the Sanders', a neutral third party's covenant of good faith and fair dealing. This then was a lopsided escrow. The entire escrow rode on the Sanders' backs.

Again, this was not a bona fide escrow. None of the elements of a bona fide escrow are found here. This was a sham escrow designed for the sole benefit of the other parties to the escrow. This was an escrow in name only. For all practical purposes, only the other parties to the escrow were benefitted. The Sanders' were deceived. The price of the deception to the Sanders' was in excess of one million ($1,000,000.00) then, foreclosure now, and eviction following foreclosure. This then was an expensive *sham* escrow. The escrow and all of its ramifications could not have occurred without the prejudicial conduct of the "neutral" third party whom the Sanders' trusted, and reasonably so, FATCO, the Settlement Agent.

## THE DEED OF TRUST CONTAINS THE WRONG LEGAL DESCRIPTION, THERFORE THE DEED OF TRUST IS VOID AB INITIO AND CONVEYED NOTHING

It is an implied and expressed condition precedent to every escrow, indeed to every conveyance of real property, that land be identified, not misidentified. The wrong legal

description renders a conveyance a nullity. You can't convey what you don't own. You can't convey someone else's property. You can't give a mortgage on property you don't own. You can't give a security interest in a deed of trust that contains the wrong legal description. Here, the deed of trust contained the *wrong legal description* (EX-30: Record of Survey). This rendered the deed of trust void *ab initio*. The deed of trust <u>failed</u> to convey a security interest in Plaintiffs' home. The deed of trust is void *ab initio*. The deed of trust must be removed from the public records. The deed of trust represents a cloud on title. The deed of trust represents a cloud on title of at least two (2) entirely different properties, the one that is the subject of the refinance here, erroneously described, and the actual property described by the misdescription. The fact that the title insurance company insuring title here, FATCO, failed to get the land description right, is an act of gross negligence on their part. Because title insurance and land description are the pillars of their business and they are considered by some to be experts in their industry, it is all the more egregious that the legal description to the Sanders' property is wrong. It's not a typo. It's not a missed inch in the metes and bounds description. The property is in the *wrong* "city!" The only thing worse would have been if FATCO had put the Sanders' property in the wrong *state*. The wrong legal description is fatal to the escrow. Escrow never "closed," for it couldn't. The home was in the wrong *city*! (EX-30: Record of Survey containing the ***correct*** legal description.)

Wrong house, wrong legal description, forged Notes, void Notes, void deed of trust, effected rescission, *Wozab* (one-form-of-action/security first rule), prejudiced escrow (non-neutral), failure to close (escrow), failure to consummate (both escrow and the loan transaction), fraud in the inducement, fraud in the factum, and cases upon cases, including the Complaint of The People of the State of California against Countrywide, and the subsequent Stipulated Judgment and Injunction, *screams* out to this court that the instant case is more of the same: fraud, fraud, and more fraud. Plaintiffs are not alone. These frauds are systemic in a corrupt financial services industry that could not get away with fraudclosure and fraudvictions but for the aid of the courts that Order foreclosures and evictions, or simply fail to discern who is getting a free house. Plaintiffs challenge the court to demonstrate how investing in excess of one million ($1,000,000.00) from their labors, in the event AWL (a non-existent entity) prevails over the Sanders', does not constitute a ***direct loss*** in excess of one million ($1,000,000.00). Our courts

shouldn't be so prejudiced toward homeowners and so bent toward banks that they fail to discern who is getting a *free house*.

Dated this 24th of August, 2015

_____

Marshall Samuel Sanders, In *Propria Persona*

Class Representative-Plaintiff

**FIRST AMENDED COMPLAINT** – 25

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
1621 Kensing Lane, Santa Ana, CA 92705-3074

A true and correct copy of the foregoing document entitled **FIRST AMENDED COMPLAINT** and this Proof of
Service will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d);
and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date)
_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that
the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated
below: No access.

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or
adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class,
postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will
be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) 8/24/15, I served the
following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.
Hon. Erithe Smith, 411 W. Fourth St., Courtroom 5A/Ste. 5040, Santa Ana, CA 92701-4500 (5th fl. bin outside elevators)
U.S. Trustee, 411 W. Fourth St., Ste. 9041, Santa Ana, CA 92701, Pers. Delv'y Recep. & nancy.goldenberg@usdoj.gov
Locke Lord 300 S. Grand Ave.,Ste 2600, Los Angeles, CA 90071-3194:csison@lockelord.com;
Bank of America Corporation & all subsidiaries/controlled entities, 100 N. Tryon, Charlotte, NC 28255

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 8/24/15 | Lydia O. Sanders | _Lydia O. Sanders_ (signature) |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

## ATTACHMENT "B" TO ADVERSARY PROCEEDING PROOF OF SERVICE

Names and Addresses of Defendants
Served with Summons and Adversary Complaint
(served at address(es) and by method(s) identified)

1.    Countrywide Bank, N.A. ("Countrywide")
      (via facsimile & first-class prepaid postage U.S. Mail)
      C/o Bank of America aka Bank of America Corp. aka Bank of America
      Corporation
      100 N. Tryon St.
      Charlotte, NC 28255

2.    Lender Processing Services ("LPS")
      (via facsimile & first-class prepaid postage U.S. Mail)
      C/o Black Knight Financial Services
      601 Riverside Avenue
      Jacksonville, FL

      And

      Lender Processing Services ("LPS")
      (via personal delivery & facsimile & first-class prepaid postage U.S. Mail)
      C/o Service Link LLC
      3220 El Camino Real
      Irvine, CA 92602

3.    Agency Sales and Posting ("ASAP")
      (via personal delivery & facsimile & first-class prepaid postage U.S. Mail)
      C/o Service Link LLC
      3220 El Camino Real
      Irvine, CA 92602

4.    Fidelity National Title Insurance Company ("FNT")
      (via personal delivery & facsimile & first-class prepaid postage U.S. Mail)
      C/o Fidelity National Financial
      C/o Lender Processing Services ("LPS")
      3220 El Camino Real
      Irvine, CA 92602

5.    The Royal Bank of Scotland Group PLC ("RBS")
      (via first-class prepaid postage U.S. Mail)
      36 Saint Andrew Square
      Edinburgh EH2 2YB, United Kingdom

6.      Greenwich Capital ("GC")
        (via first-class prepaid postage U.S. Mail)
        C/o Greenwich Capital Financial ("GCF")
        C/o RBS Holdings USA Inc.
        600 Washington Boulevard
        Stamford, CT 06901

7.      The Goldman Sachs Group, Inc. ("GS")
        (via personal delivery & first-class prepaid postage U.S. Mail)
        8105 Irvine Center Drive #560
        Irvine, CA 92618

        And

        The Goldman Sachs Group, Inc. ("GS")
        (via first-class prepaid postage U.S. Mail)
        Goldman, Sachs & Co.
        200 West Street
        New York, NY 10282

8.      Effinity Financial Corporation ("EFC")
        C/o Bank of America Corporation
        100 N. Tryon St.
        Charlotte, NC  28255

9.      Countrywide Home Loans, Inc. ("CHL")
        (via first-class prepaid postage U.S. Mail)
        C/o Bank of America Corporation
        100 N. Tryon St.
        Charlotte, NC  28255

10.     Countrywide Financial, FSB ("CF")
        (via first-class prepaid postage U.S. Mail)
        C/o Bank of America Corporation
        100 N. Tryon St.
        Charlotte, NC  28255

11.     Countrywide Financial Corporation ("CFC")
        (via first-class prepaid postage U.S. Mail)
        C/o Bank of America Corporation
        100 N. Tryon St.
        Charlotte, NC  28255

12.  Countrywide Home Loans Servicing, LP ("CHLS")
     (via first-class prepaid postage U.S. Mail)
     C/o Bank of America Corporation
     100 N. Tryon St.
     Charlotte, NC  28255

13.  CFHC ("CFHC")
     (via first-class prepaid postage U.S. Mail)
     C/o Bank of America Corporation
     100 N. Tryon St.
     Charlotte, NC  28255

14.  Countrywide Bank, FSB ("CBFSB")
     (via first-class prepaid postage U.S. Mail)
     C/o Bank of America Corporation
     100 N. Tryon St.
     Charlotte, NC  28255

15.  Treasury Bank, N.A. ("TBNA")
     (via first-class prepaid postage U.S. Mail)
     C/o Bank of America Corporation
     100 N. Tryon St.
     Charlotte, NC  28255

16.  Countrywide Financial Corp. ("CFCORP")
     (via first-class prepaid postage U.S. Mail)
     C/o Bank of America Corporation
     100 N. Tryon St.
     Charlotte, NC  28255

17.  Treasury Bank Ltd. ("TB")
     (via first-class prepaid postage U.S. Mail)
     C/o Bank of America Corporation
     100 N. Tryon St.
     Charlotte, NC  28255

18.  Countrywide Credit Industries, Inc. ("CCI")
     (via first-class prepaid postage U.S. Mail)
     C/o Bank of America Corporation
     100 N. Tryon St.
     Charlotte, NC  28255

19.    Bank of America, N.A. ("BANA")
       (via first-class prepaid postage U.S. Mail)
       C/o Bank of America Corporation
       100 N. Tryon St.
       Charlotte, NC  28255

20.    Bank of America
       (via first-class prepaid postage U.S. Mail)
       C/o Bank of America Corporation
       100 N. Tryon St.
       Charlotte, NC  28255

21.    LandSafe Title ("LST")
       (via first-class prepaid postage U.S. Mail)
       C/o Bank of America Corporation
       100 N. Tryon St.
       Charlotte, NC  28255

22.    LandSafe Title of California, Inc. ("LSTC")
       (via first-class prepaid postage U.S. Mail)
       C/o Bank of America Corporation
       100 N. Tryon St.
       Charlotte, NC  28255

23.    ReconTrust Company, N.A. ("RTC")
       (via first-class prepaid postage U.S. Mail)
       C/o Bank of America Corporation
       100 N. Tryon St.
       Charlotte, NC  28255

24.    Wells Fargo Bank, N.A. ("WFBNA")
       (via first-class prepaid postage U.S. Mail)
       101 N. Phillips Avenue
       Sioux Falls, SD 57104

25.    Wells Fargo Bank ("WFB")
       (via first-class prepaid postage U.S. Mail)
       101 N. Phillips Avenue
       Sioux Falls, SD 57104

26.    Wells Fargo Bank, N.A., as Trustee, on behalf of the holders of the Harborview
       Mortgage Loan Trust Mortgage Loan Pass-Through Certificates, Series 2007-1
       (via first-class prepaid postage U.S. Mail and E-mail to Counsel)
       C/o Locke Lord LLP
       300 South Grand Avenue, Suite 2600
       Los Angeles, CA

AND

Wells Fargo Bank, N.A., as Trustee, on behalf of the holders of the Harborview
Mortgage Loan Trust Mortgage Loan Pass-Through Certificates, Series 2007-1
(via first-class prepaid postage U.S. Mail)
101 N. Phillips Avenue
Sioux Falls, SD 57104

27.    BAC Home Loans Servicing, L.P. ("BACHLS")
       C/o Bank of America Corporation
       100 N. Tryon St.
       Charlotte, NC  28255

28.    Mortgage Electronic Registration Systems, Inc. ("MERS")
       (via first-class prepaid postage U.S. Mail)
       P.O. Box 2026
       Flint, MI 48501-2026

       And

       Mortgage Electronic Registration Systems, Inc. ("MERS")
       (via first-class prepaid postage U.S. Mail)
       1901 E. Voorhees Street, Suite C
       Danville, IL 61834

29.    MERSCORP, INC. ("MERSCORP")
       (via first-class prepaid postage U.S. Mail)
       1818 Library Street # 300
       Reston, VA 20190

30.    First American Title Insurance Company ("FATCO")
       (via first-class prepaid postage U.S. Mail)
       1 First American Way
       Santa Ana, CA 92707

31.    The First American Corporation ("TFAC")
       (via first-class prepaid postage U.S. Mail)
       1 First American Way
       Santa Ana, CA 92707

32.    Freedom Financial Lending, Inc.
       (via first-class prepaid postage U.S. Mail)
       1307 W. 6TH St.
       Corona, CA 92882-3294

5

33.    Angelo R. Mozilo
       (via first-class prepaid postage U.S. Mail)
       C/o Bank of America Corporation
       100 N. Tryon St.
       Charlotte, NC  28255

34.    David Sambol
       C/o Bank of America Corporation
       100 N. Tryon St.
       Charlotte, NC  28255

35.    Eric Sieracki
       C/o Bank of America Corporation
       100 N. Tryon St.
       Charlotte, NC  28255

36.    Kenneth D. Lewis
       C/o Bank of America Corporation
       100 N. Tryon St.
       Charlotte, NC  28255

37.    John G. Stumpf
       (via first-class prepaid postage U.S. Mail)
       C/o Wells Fargo Bank
       101 N. Phillips Avenue
       Sioux Falls, SD 57104

       And

       John G. Stumpf
       (via first-class prepaid postage U.S. Mail)
       C/o Wells Fargo Bank
       420 Montgomery Street
       San Francisco, CA 94104

38.    R. K. Arnold
       (via first-class prepaid postage U.S. Mail)
       1818 Library Street # 300
       Reston, VA 20190

39.    General Electric ("GE")
       (via first-class prepaid postage U.S. Mail)
       3135 Easton Turnpike
       Fairfield, CT 06825

6

40.    Ally Financial, Inc.
       (via first-class prepaid postage U.S. Mail)
       200 Renaissance Center
       Detroit, MI 48243

41.    General Motors Acceptance Corporation
       (via first-class prepaid postage U.S. Mail)
       200 Renaissance Center
       Detroit, MI 48243

42.    PriceWaterhouseCoopers
       (via first-class prepaid postage U.S. Mail)
       4100 Corporate Center Drive, Suite 400
       Springdale, AR 72762

43.    Grant Thornton LLP
       (via first-class prepaid postage U.S. Mail)
       175 W. Jackson Blvd., 20th Fl.
       Chicago, IL 60604-2687

44.    KPMG, LLP
       (via first-class prepaid postage U.S. Mail)
       1350 Avenue of the Americas
       New York,  NY  10019

45.    Deloitte Touche Tohmatsu
       (via first-class prepaid postage U.S. Mail)
       695 Town Center Drive #1200
       Costa Mesa, CA 92626

       And

       Deloitte Touche Tohmatsu
       (via first-class prepaid postage U.S. Mail)
       30 Rockefeller Plaza
       New York, NY, 10112-0015

46.    Ernst & Young
       (via first-class prepaid postage U.S. Mail)
       Five Times Square
       New York, NY 10036

47.    Kelley Escrow Company
       (via first-class prepaid postage U.S. Mail)
       12255 Newport Ave
       Santa Ana, CA 92705

48.    Kathleen Ann Kelley
       (via first-class prepaid postage U.S. Mail)
       C/o Kelley Escrow Company
       12255 Newport Ave
       Santa Ana, CA 92705

49.    Thomas Martin Kelley (State Bar No. 71455)
       (via first-class prepaid postage U.S. Mail)
       11941 Woodlawn Ave
       Santa Ana, CA 92705